MoFaRuand, J.,
delivered the opinion of the court:
The prisoner was indicted in the circuit court of Monroe county for the murder of his wife. Upon his application, the venue was changed to McMinn county, where a trial was had, resulting in a verdict of murder in the first degree. His motion for a new trial was refused, anid the judgment of death pronounced. A hill of exceptions was taken, and an appeal in error prosecuted to this court.
It is assigned as error, that in impaneling the jury, Charles Cate was called, and-qualified himself in answer to the usual questions. He then stated, in answer to the question of the attorney-general, that he had a cause pending- in the court, hut it was not for trial at that term, as it had been continued. The court- sustained the attorney-generals challenge for cause, holding that juror incompetent. The prisoner proposed to accept the- juror, and excepted to the action of the court. Secs. 3988 and 4010 of the Code [Shannon’s Code, secs. 5Y99, 5821], make jurors in such cases incompetent whether their causes he for trial at that term or not. This was directly decided in Riley v. Bussell, 1 Heis., 294. The action of the circuit judge was, therefore, correct, besides, in this case, the prisoner did not exhaust his challenges. If the juror was even *397 competent tlie prisoner was not injured, as Re obtained other jurors of liis own selection.
After the judge had read his written charge to the jury, the defendant’s counsel, desiring further instruction, reduced his propositions to writing, and read the same to tire court in the presence of the jury. The judge took the paper and indorsed the following words: “The above is made a part of the charge, at the request of the counsel for the accused,” which indorsement he then read to the jury, and handed the propositions with the indorsement and the balance of the charge to the jury, but did not read the propositions to the jury, as they had already been read in their presence by the prisoner’s counsel.
Tills, it is insisted, is not a compliance with the act of the legislature of 1873, ch. 57, sec. 3 [Shannon’s Code, sec. 7187].
But we are of opinion that the requirements of the statute have been complied with, if not literally, at least in substance.
The statute requires the judge to reduce his decision upon the written propositions, to writing, and read the same to the jury without one word of oral comment, it being’ intended to prohibit judges from making oral statements to juries in cases involving the liberties and lives of the citizens. His decision was written and read to the jury without a word of oral comment, and the propositions, with the decision and the balance of the charge, delivered to the jury, as the statute requires.
The failure to re-read the propositions to the jury cannot he held erroneous.
It is next objected that the charge of the judge is erroneous upon the question of insanity. He said: “Everyman is presumed to he sane until his insanity is established by proof. Mental weakness or folly is not insanity. If the defendant knew it was wrong to kill, had mind sufficient +o know right from wrong, and understood the nature of *398 his act and his relation to 'the party injured, them, he was ■not insane.”
The jury were further told that a reasonable doubt of the prisoner’s sanity would entitle him to an acquittal.
We do not undertake to say that the above is the best definition that may he given of a perfectly sane mind. Hor do we undertake to say that the condition of mind under which crimes of an atrocious character are often committed, does not, in a sense, closely resemble insanity. How far the disposition, to commit crime is the result of a diseased or abnormal condition of the body .or-mind, is, for some purposes, a question worthy of serious consideration.
But, for the purpose of enforcing the criminal law, we must adopt practical rules that may be understood by the common mind of those persons composing juries. The theories of those who make the subject of insanity a study, tend strongly to the conclusion that all criminals are insane. Ho matter how plausible such theories are in a -metaphysical sense, they cannot he allowed to prevail in the trial and punishment of criminals. The man who possesses in a healthy condition the ordinary qualities of mirad must be punished as a sane man.
The charge given by the circuit judge follows the rule usually laid down, and charges substantially similar have been approved by this court, and we think, as applied to the facts of this case, it is not erroneous.
If the proof had tended to show that the prisoner was acting under the impulse of some special delusion or mania which he could not control, further instructions might have been given, but there was no such testimony, and all additional instructions asked were given precisely as requested.
It is not error to fail to charge upon questions of insanity not raised by the proof. Henslie v. The State, 3 Heis., 202, 211, 212.
It appears that the prisoner was about twenty-two or twenty-three years of age, and his wife about eighteen or nineteen, at the time of the homicide.. They had been mar *399 ried about eight months. The proof as to the manner in which they lived is not full. There is proof tending to show that the prisoner had strong affection for his-wife; on the other hand, there is evidence to show that they did not live happily together. They had some difficulties. She was disposed to leave him.
Some time before her death she had gone to the house of John "Fanner, his brother-in-law, and stayed all night and all the next day. She said he had whipped her the day before and shut her up in the house, but she got out.
On this occasion, the prisoner followed his wife to the house of Farmer, and towards the evening of the next, day she returned home with him. She again came to the house of Farmer the day she was lolled. Soon after, the prisoner followed and found her there. But little was said between them. He asked her why she did not go home. She replied she would not go until she got ready. He thereupon drew a pistol and shot her through the wrist. He then went out of the house. She followed him to the door, and asked him not to leave her. He turned and shot her through the body. She died in a few moments. Nothing can exceed the cruelty and heartlessness of this fearful crime. It certainly possesses every element necessary to constitute the highest grade of murder. "We have carefully examined the testimony upon the question of insanity. This testimony is alone from the prisoner’s near relatives, and we think it is not sufficient to raise any reasonable doubts upon tho question. They speak of strange looks, conduct, and conversations by the prisoner on a few occasions shortly before the killing, all of which was sup- • posed by them to have resulted from an attack of fever he had some twelve months before, but these symptoms are not satisfactorily described, nor does it appear to us that there is anything in this testimony showing insanity. Whatever strange conduct they may have noticed may well be attributed to other causes, and possibly much of this was imaginary upon the part of his relatives. No one else *400 ever noticed any flung wrong with him, and we suppose if this tragedy bad not occurred, bis sanity would never bavc been doubted. "We are constrained to bold tba,t there is no error in tbe record, and direct that tbe judgment be affirmed.